The **ANSPEC COMPANY, INC.,** a Michigan corporation, and Hugh J. Montgomery, Plaintiffs,

v.

**JOHNSON CONTROLS, INC.,** a Wisconsin corporation; Hoover Universal, Inc., a Michigan corporation; Hoover Group, Inc., a Delaware corporation; and Ultraspherics, Inc., formerly a Michigan corporation, now merged with Hoover Group, Inc., Defendants.

No. 89–CV–71165–DT.

United States District Court, E.D. Michigan, S.D.

March 31, 1992.

Allyn D. Kantor, Miller, Canfield, Paddock & Stone, Ann Arbor, Mich., for plaintiffs.

Paul E. Gutermann, Squire, Sanders & Dempsey, Washington, D.C., for defendants.

### MEMORANDUM OPINION AND ORDER

ZATKOFF, District Judge.

This is a private response cost recovery action under the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.* Plaintiffs also aver claims under Michigan statutory and common law. Defendant Hoover Group has filed a counterclaim under CERCLA for contribution.

This matter is before the Court on (1) plaintiffs-Anspec Co. ("Anspec") and -Hugh Montgomery's ("Montgomery") motion to bifurcate the proceedings into separate liability and damage phases, and for summary judgment on the issue of liability as to defendant-Hoover Group, Inc. ("Hoover Group") only, and (2) defendant-Hoover Group Inc.'s motion for summary judgment

on its counterclaim against plaintiffs for contribution.

The parties have submitted response and reply briefs. Pursuant to E.D.Mich. Local R. 7.1(e)(2), the Court orders that the motions be submitted and determined on briefs. For all of the reasons stated below, plaintiffs' motion for summary judgment is denied; and defendant Hoover Group Inc.'s motion for partial summary judgment is denied in part and granted in part.

### I. STANDARD OF REVIEW

Summary judgment is appropriate where no genuine issue of material fact remains to be decided and the moving party is entitled to judgment as a matter of law. *Blakeman v. Mead Containers,* 779 F.2d 1146 (6th Cir.1986); Fed.R.Civ.P. 56(c). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In applying this standard, the Court must view all materials offered in support of a motion for summary judgment, as well as all pleadings, depositions, answers to interrogatories, and admissions properly on file in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *United States v. Diebold,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Cook v. Providence Hosp.,* 820 F.2d 176, 179 (6th Cir.1987); *Smith v. Hudson,* 600 F.2d 60 (6th Cir.1979), *cert. dismissed,* 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979). In deciding a motion for summary judgment, the Court must consider "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. at 2512. Although summary judgment is disfavored, it may be granted when the trial

would merely result in delay and unneeded expense. *Poller v. Columbia Broadcasting Systems, Inc.,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962); *A.I. Root Co. v. Computer/Dynamics, Inc.,* 806 F.2d 673, 675 (6th Cir.1986). Where the non-moving party has failed to present evidence on an essential element of its case, it has failed to meet its burden and all other factual disputes are irrelevant; thus, summary judgment is appropriate. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552; *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." (Footnote omitted)).

## II. BACKGROUND

Ultraspherics, Inc. ("Ultraspherics") is the former owner of the property at issue here—122 Enterprise Drive, Scio Township, Washtenaw County, Michigan ("the site"). For some time prior to 1978, Ultraspherics operated a business at the site and was primarily engaged in metal and plastic grinding. Ultraspherics' plastic and metal manufacturing process employed grinding compounds with liquid, often petroleum based, carriers. The manufacturing process also involved the use of acids and solvents, used for softening and cleaning, respectively.

Ultraspherics' waste disposal practices included the use of an underground storage tank. Excess, used or dirty lapping compounds with liquid carriers were collected in open five-gallon buckets; excess, used, or dirty acids and solvents were collected in closed containers and small buckets. Ultraspherics emptied the buckets and containers into the underground storage tank located on the site. It used burlap bags to filter some of the large suspended solids from the collected waste [1] materials. A hauling service periodically emptied the underground tanks, but eventually, the tanks filled with solids and were no longer used. After the underground tank was no longer available for waste storage, Ultraspherics acquired two underground septic tanks, stored them above ground, and used them instead of the underground tank.

In 1977 or early 1978, Ultraspherics discontinued its manufacturing activities at the site. It removed the two surface septic tanks. The underground tank was left in place, but the above ground funnel was removed. Ultraspherics capped and covered the underground tank, which remained full of solids, suspended solids, and liquid waste.

On July 7, 1978, Ultraspherics sold the site to Anspec. Later, Anspec sold the site to Montgomery; and presently, Montgomery is leasing the site back to Anspec.

The former owner of the site is Ultraspherics, which has merged into the Hoover Group. Hoover Group is the surviving corporation and has assumed all the assets and liabilities of Ultraspherics. Anspec was an interim owner and is the current corporate occupier of the site. Montgomery, an individual, is the current owner of the site.

In 1987, the Michigan Department of Natural Resources ("MDNR") notified Anspec that contamination was detected in the groundwater beneath the site. The MDNR required Anspec to test the underground storage tank and surrounding soil and groundwater for contamination.

Anspec hired Technological Service Inc. ("TSI") to perform a hydrogeologic investigation of the site. As part of the investigation, TSI installed four groundwater observation wells and analyzed samples from the wells. TSI detected various halogenated organic compounds.

In July 1988, Anspec hired Swanson Environmental, Inc. ("SEI") to test the contents of the underground storage tanks,

---

1. The Court uses the word "waste" according to the word's common, non-legal meaning. The Court's usage is not meant to indicate the conclusion, factual or legal, that the chemicals on the site were "hazardous waste," as the term is used in various federal environmental statutes, including CERCLA.

arrange for the removal and disposal of the contents, and excavate and dispose of the tank itself. SEI's work revealed the presence of a number of contaminants, including, among others, benzene, toluene, and xylene. Anspec eventually disposed of the tank and its contents. Also, pursuant to the MDNR's requirements, Anspec contracted with SEI to test soil and groundwater beneath the excavated tank. The soil beneath the tank contained various aromatic and aliphatic organic compounds, including halogenated ethane, toluene, and xylene. Test results also revealed that water below the tank was contaminated with identical and/or similar compounds.

Plaintiffs subsequently filed this suit under CERCLA, seeking indemnification from defendants for past and future costs, including attorney fees. Plaintiffs also brought claims for fraud, nuisance and asserted a claim under the Michigan Environmental Protection Act. Defendant–Hoover Group counterclaimed for contribution under § 9613(f) of CERCLA.

### III. PLAINTIFFS' MOTION

In the instant motion, plaintiffs request an order of bifurcation and summary judgment on the issue of liability as to defendant-Hoover Group. The Court's analysis and adjudication of the bifurcation and liability issues in this case are necessarily related. This relationship arises under the statutory scheme itself.

■ To recover response costs in a private response cost recovery action under § 9607 of CERCLA, a private party must prove that (1) the defendant(s) falls within one or more of the categories of "covered persons" under § 9607(a)(1)–(4); (2) the site in question is a "facility" as defined in § 9601(9) of CERCLA; (3) a release or threatened release of hazardous substances occurred on the subject site; (4) *the release or threatened release caused the private party to incur costs;* (5) *such costs were*

*necessary costs of response;* and (6) *the party's response actions were consistent with the National Contingency Plan ("NCP"). Artesian Water Company v. New Castle County,* 659 F.Supp. 1269, 1278–79 (D.Del.1987), *aff'd* 851 F.2d 643 (3rd Cir.1988) (emphasis added).[2]

Pursuant to *Artesian,* a finding of liability is predicated upon the Court first finding that the costs associated with the alleged response action were necessary and consistent with the NCP. In effect, a prima facie case under CERCLA requires proof of what is typically a liability issue (such as who arranged for disposal of hazardous substances at the site) and proof of what is typically a damage issue (what were plaintiffs' costs and were they reasonable); the liability and damage issues are inextricably intertwined under the statutory scheme. Therefore, plaintiffs' motion for bifurcation must be denied.

In adopting an integrated approach to determining CERCLA claims, the Court is not precluded from considering motions for partial summary judgment with respect to the various elements of a prima facie case. Therefore, the Court below considers the following issues as they relate to plaintiffs' prima facie case: (1) whether defendant-Hoover Group is a "covered person" under CERCLA; and (2) whether, as plaintiffs allege, attorney fees are recoverable response costs in a private response cost recovery action under CERCLA.

### A.

Section 9607 states clearly the categories of "covered persons," the circumstances under which liability attaches, and the limited defenses available to responsible parties in cost recovery actions. The relevant statutory section provides:

Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section—

---

**2.** Hoover Group does not dispute that the site is a facility, that there has been a release of hazardous substances, and that it is the successor to Ultraspherics. Thus, the only questions remaining with respect to plaintiffs' prima facie case

under CERCLA are whether the defendants are "covered persons" and whether the release caused the plaintiffs to incur costs that were necessary and consistent with the NCP.

(1) the owner and operator of a vessel or a facility,

(2) any person[,] who at the time of disposal of any hazardous substance[,] owned or operated any facility at which such hazardous substance were disposed of,

(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility owned or operated by another party or entity and containing such hazardous substances, and

(4) any person who accepts or accepted any hazardous substance for transport to disposal or treatment facilities or sites selected by such person, form which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for—

   \*    \*    \*    \*    \*    \*

(B) any ... necessary costs of response incurred by any other person consistent with the national contingency plan; and

(C) damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release.

■ Essentially, liability under § 9607 extends to four classes of persons:[3] (1) the current owner or operator of a facility at which there is a release or threatened release of a hazardous substance; (2) the person who owned or operated the facility at the time of a hazardous substance disposal; (3) the persons who arranged for the treatment or disposal of a hazardous substance at the facility; and (4) the persons who transported hazardous substances to the facility. Section 9607 imposes strict liability—that is, without regard to fault—

on a liable party. *J.V. Peters & Co. v. EPA,* 767 F.2d 263, 266 (6th Cir.1985).

In their attempt to establish that defendant-Hoover Group is a "covered person" under CERCLA, the plaintiffs rely on § 9607(a)(2) of CERCLA, which categorizes as a "covered person" any person who owned or operated a facility during a time in which hazardous substances were disposed of at the facility. Plaintiffs state that:

It is beyond dispute that Ultraspherics was the owner and operator of the facility for a period of years prior to 1978 during which time waste chemicals and liquids were disposed of in tanks. An underground tank was left on the site with a stew of waste chemicals including chemicals which contaminated the soil and ground water.

■ Hoover Group responds by stating that "plaintiffs have no proof that any materials Ultraspherics disposed at the facility were 'hazardous substances' within the meaning of CERCLA." Hoover Group misapprehends § 9607(a)(2). Section 9607(a)(2) requires merely that a person own a facility at the time hazardous substances are disposed of on the site; it does not require that the owner actually dispose of the hazardous substances. Hoover Group also challenges plaintiffs' allegations by arguing that chloroethylene—the only specific substance identified by former Ultraspherics' worker Jack Phelan in his deposition—appears in any of the lists of hazardous substances specified in § 9601(14) of CERCLA.

■ At this point, based upon the scant proof submitted by all parties relating to this motion, the Court cannot conclude that hazardous substances were disposed of on the site at the time Ultraspherics owned it. Although it appears true that hazardous substances were found on the property, as indicated by the test results acquired by plaintiffs and as stipulated to by Hoover Group, plaintiffs have failed to establish

---

**3.** Under § 9601(21), a "person" is "an individual, firm, corporation, association, partnership, consortium, joint venture, commercial entity, United States Government, State, municipality, commission, political subdivision of a state, or any interstate body." All of the parties in this case—individuals and corporations—are "persons" under CERCLA.

that such hazardous substances were actually disposed of on the site at the time Hoover Group or its acquisition, Ultraspherics, owned or operated the facility. The Court notes that the affidavit of Thomas Grover submitted by the plaintiffs makes conclusory allegations that the hazardous substances located in the soil and surface water of the site are the same as the substances used and disposed of by Ultraspherics during its ownership and operation of the facility. Grover's affidavit is conclusory and does not satisfy the specificity requirement under Rule 56 of the Fed.R.Civ.P.

Accordingly, the Court finds that there are genuine issues of material fact regarding the issue of whether hazardous substances as defined under CERCLA were disposed of on the site at the time Ultraspherics/Hoover Group owned and/or operated the site.

### B.

■ The American Rule provides that each party bears the burden of its own legal costs, and that "absent explicit congressional authorization, attorney fees are not recoverable costs of litigation." *Runyon v. McCrary*, 427 U.S. 160, 185, 96 S.Ct. 2586, 2602, 49 L.Ed.2d 415 (1976); *Accord Alyeska Pipeline Co. v. Wilderness Society*, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975). Although CERCLA specifically allows the government to seek an award of attorney fees, a parallel statutory provision for private parties does not exist. The Sixth Circuit Court of Appeals has not addressed the issue of whether attorney fees incurred by a private party constitute recoverable response costs under CERCLA.

Many Courts faced with the issue have determined that in private cost recovery actions, attorney fees are not recoverable response costs. *T & E Industries, Inc. v. Safety Light Corp.*, 680 F.Supp. 696

(D.N.J.1988); *Mesiti v. Microdot, Inc.*, 739 F.Supp. 57 (D.N.H.1990); *Regan v. Cherry Corp.*, 706 F.Supp. 145 (D.R.I.1989); *In re Hemingway Transport, Inc.*, 108 B.R. 378 (Bankr.D.Mass.1989).

The Eighth Circuit Court of Appeals has held to the contrary. In *General Electric Co. v. Litton Business Systems, Inc.*, 920 F.2d 1415 (8th Cir.1990), the court interpreted the word "response" in 42 U.S.C. § 9601(25) to include attorney fees. *Accord Allied Towing Corp. v. Great Eastern Petroleum Corp.*, 642 F.Supp. 1339, 1349 (E.D.Va.1986). The court stated that because a "response" action under § 9601(25) includes "enforcement" activities, recoverable response costs must include enforcement costs. The court went on to say that attorney fees incurred in the prosecution of a private action are enforcement costs, and are therefore recoverable response costs.[4]

*Litton* is not persuasive. The court did not explain how its interpretation of § 9601(25) harmonized with the longstanding American Rule regarding recovery of attorney fees. This omission is particularly important when one considers the resulting internal incongruity of CERCLA, providing explicit and unequivocal language allowing the government to seek attorney fees under § 9604(b)(1), but providing only a circumscribed textual basis, as stated in *Litton*, for granting the same right to private parties.[5] What is more, the holding in *Litton* does not consider Congress' failure to include a provision for recovery of attorney fees by private party litigants in the comprehensive amendments to CERCLA passed in 1986. *See Regan v. Cherry Corp.*, 706 F.Supp. 145, 149 (D.R.I.1989).

*Litton* presents other problems as well. If attorney fees are response costs, then to recover such costs under § 9607, a party must establish that such expenditures were consistent with the NCP, which is silent

---

**4.** CERCLA does not define "enforcement activities."

**5.** The inclusion of a section specifically addressing the government's ability to recover attorney fees strongly suggests that Congress was well aware of the need—given the *Runyon* and *Alyeska* rationales—to unequivocally declare a party's right to recover attorney fees under CERCLA, which they did not do for private party litigants.

with respect to the criteria a court would employ in determining the legitimacy of attorney fees. Once again, to consider attorney fees recoverable response costs strains the statutory and regulatory language and design. This Court declines to give CERCLA such an interpretation.

While the Court is well aware of the judicial tendency to interpret CERCLA expansively in the hope of effecting its remedial goals, it nonetheless believes that such an ambitious effort with respect to the issue of attorney fees would be disingenuous and would denigrate settled rules of statutory interpretation and the integrity of the statutory scheme. The Court declines to invigorate the *Litton* court's achievement of an expansion—rather than an interpretation—of the term "response."

Based upon the well-settled American presumption against allowing recovery of attorney fees, and based upon the lack of explicit congressional authorization for recovery of attorney fees in the statute, the Court concludes that attorney fees in private actions are not recoverable "response costs" under CERCLA.

## IV. DEFENDANT–HOOVER GROUP'S MOTION

Hoover Group filed its motion for partial summary judgment "as a protective matter in the event that the Court grants plaintiffs' ... motion for partial summary judgment against Hoover Group." Despite the conditional nature of defendant Hoover Group's motion, the Court's denial of plaintiffs' motion does not foreclose adjudication of Hoover Group's specific claims.

Hoover Group has filed a counterclaim against the plaintiffs seeking contribution under § 9613(f). To establish a claim for contribution under § 9613(f), Hoover Group must prove at the outset that the plaintiffs are within one of the four categories of covered persons under § 9607(a) of CERCLA.

In its motion, Hoover Group argues that plaintiffs are covered persons because (1) they are the current owners and operators of the facility, and (2) they were owners and operators at the time hazardous substances were disposed of on the site.

### A.

Plaintiffs admit that they are the current owners and operators of the site/facility. However, plaintiffs contend that even if they are current owners and operators, they are insulated from liability under § 9607(b)(3)—sometimes referred to as the "third party" defense. The third party defense is found in two sections of CERCLA. Section 9607(b)(3) provides the main elements of the defense. Section 9601(35)(A) and (B) fleshes out some of the terminology in 9607(b)(3).

Under § 9607(b)(3), CERCLA relieves those who would otherwise be liable under the Act if they can establish by a preponderance of the evidence that (1) the release of hazardous substances was caused by an Act or omission of a third party who was not an employee nor one with whom the party had a contractual relationship, and (2) that they exercised due care with respect to the hazardous substance and that he took precautions against foreseeable acts or omissions of any such third party.

The definition of "contractual relationship," as the term is used in § 9607(b)(3), is found in § 9601(35)(A), which states the following:

The term "contractual relationship", [sic] for the purpose of § 9607(b)(3) of this Title includes, but is not limited to, land contracts, deeds or other instruments transferring title or possession, *unless* the real property on which the facility concerned is located was acquired by the defendant after the disposal or placement of the hazardous substance on, in, or at the facility, and one or more of the circumstances described in clause (i), (ii), or (iii) is also established by the defendant by a preponderance of the evidence:

(i) at the time the defendant acquired the facility the defendant did not know and had no reason to know that any hazardous substance which is the subject of the release or threatened re-

lease was disposed of on, in, or at the facility.

(ii) the defendant is a government entity which acquired the facility by escheat, or through any other involuntary transfer or acquisition, or through the exercise of eminent domain authority by purchase or condemnation.

(iii) the defendant acquired the facility by inheritance or bequest.

The last requirement for establishing the third party defense can be found at § 9601(35)(B), which states:

(B) To establish that the defendant had no reason to know, as provided in clause (i) of subparagraph (A) of this paragraph, the defendant must have undertaken, at the time of acquisition, all appropriate inquiry into the previous ownership and uses of the property consistent with good commercial or customary practice in an effort to minimize liability. For purposes of the preceding sentence the court shall take into account any specialized knowledge or experience on the part of the defendant, the relationship of the purchase price to the value of the property if uncontaminated, commonly known or reasonably ascertainable information about the property, the obviousness of the presence and likely presence of contamination at the property, and the ability to detect such contamination by appropriate inspection.

■■■ Therefore, the third party defense can only be established by satisfying the requirements of § 9607(b)(3) and § 9601(35)(A) and (B). The two sections enumerate many factual criteria that the court must address and that none of the parties have adequately discussed in their briefs and/or attached exhibits. Accordingly, the Court finds that genuine issues of material fact exist as to whether plaintiffs are insulated from liability under the third party defense.

### B.

Plaintiffs contend that there was no "disposal" of hazardous substances at the time they owned or operated the site, and that therefore, they are not covered parties. Hoover Group has not submitted sufficient proof to establish that migration and/or leaking of hazardous substances has occurred throughout plaintiffs' past or present ownership and operation of the facility.[6] Therefore, summary judgment is not appropriate on this issue.

### V. STATE LAW CLAIMS

■■■ The Court, *sua sponte*, considers whether it should retain jurisdiction over plaintiffs' state law claims.

28 U.S.C. § 1367 provides that the district courts may decline to exercise supplemental jurisdiction over a state claim if (1) the state claim raises a novel or complex issue of state law; (2) the state claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

Three of the four counts in plaintiffs' complaint arise under state law. The three claims have their genesis in either or both Michigan's statutory law and Michigan

---

**6.** The parties dispute the legal definition of "disposal" under the statute. Under § 9601(29), the term "disposal" is given the meaning provided in the Solid Waste Disposal Act, 42 U.S.C. § 6903(3) which states that disposal is the "discharge, deposit, injection, dumping, spilling, leaking, or placing of any ... hazardous waste into or on the land ... so that such hazardous waste or any constituent thereof may enter the environment...."

Hoover Group argues that leaking and/or migration of hazardous substances within the soil constitutes disposal for purposes of establishing liability under § 9607(a). Plaintiffs contend that an owner cannot be held liable under CERCLA for "disposal" that may have occurred as a result of migration of already existing contamination.

It is not necessary to reach a legal conclusion regarding the exact definition of the word "disposal" as it is used in CERCLA. The Court, above, has determined that Hoover Group has not submitted sufficient proof to establish that leaking and/or migration has in fact occurred at any point during the plaintiffs' ownership and/or operation of the site/facility. Therefore, the task of defining the word "disposal" is left for a more appropriate time.

common law. Their numerosity and weight compels the Court to the conclusion that they will substantially predominate over the CERCLA claim and will raise novel and complex issues of state law. Accordingly, pursuant to 28 U.S.C. § 1367, the Court hereby dismisses without prejudice plaintiffs' claims for nuisance, fraud, and violation of the Michigan Environmental Protection Act.

## VI. CONCLUSION

The Court finds that genuine issues of material fact exist with respect to the issue of whether Ultraspherics/Hoover Group owned and/or operated the site at the time hazardous substances were disposed of on the site; the Court also concludes as a matter of law that attorney fees are not recoverable under CERCLA in private response costs recovery actions; and (2) because proof of damages is considered an element of a prima facie case under CERCLA, the Court cannot bifurcate this case into separate liability and damages phases. Accordingly, plaintiffs' motion for bifurcation and for summary judgment is DENIED.[7]

With respect to defendant-Hoover Group's motion for summary judgment, the Court finds that (1) genuine issues of material fact exist regarding the issues of whether plaintiffs were the owners of the subject site when hazardous substances were disposed of there; and (2) whether the third party defense is available to plaintiffs; the Court also finds that (3) the plaintiffs' are current owners and/or operators (and hence "covered persons") of the site/facility; genuine issues of material fact exist regarding the plaintiffs' status as owners and/or operators at the time hazardous substances were disposed of at the site. Accordingly, defendant-Hoover Group's motion for summary judgment is DENIED in part and GRANTED only with

[7.] Plaintiffs' motion for leave to file a reply brief in excess of 5 pages is rendered MOOT by the Court's consideration of the 8–page reply brief submitted by plaintiffs.

Defendants' motion for leave to file a supplemental brief in opposition to plaintiffs' motion

respect to the issue of plaintiffs' current ownership/operation.

IT IS SO ORDERED.

is denied; of course, the denial of Hoover Groups's motion is inconsequential in light of this Court's denial of plaintiffs' motion for summary judgment.