*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

THOMAS E. SCHAIBERGER and TERRY L.
SCHAIBERGER,

      Petitioners-Appellees,

v

DYLAN M. PEIFFER and ERIKA L. PEIFFER,

      Respondents-Appellants.

UNPUBLISHED
October 22, 2019

No. 347494
Ogemaw Circuit Court
Family Division
LC No. 18-650925-DC

*In re* Guardianship of BMP, a Minor.[1]

THOMAS E. SCHAIBERGER and TERRY L.
SCHAIBERGER, Co-Guardians of BMP, a Minor,

      Petitioners-Appellees,

v

DYLAN M. PEIFFER and ERIKA PEIFFER,

      Respondents-Appellants.

No. 347496
Ogemaw Probate Court
LC No. 16-015714-LG

*In re* Guardianship of MMP, a Minor.

THOMAS E. SCHAIBERGER and TERRY L.
SCHAIBERGER, Co-Guardians of MMP, a

---

[1] To preserve confidentiality, we refer to the minor children by their initials.

Minor,

        Petitioners-Appellees,

v                                                 No.  347512
                                                 Ogemaw Probate Court

DYLAN M. PEIFFER and ERICA L. PEIFFER,      LC No.  16-015715-LG

        Respondents-Appellants.

_____

Before:  STEPHENS, P.J., and SERVITTO and RONAYNE KRAUSE, JJ.

PER CURIAM.

In these consolidated appeals, respondents Dylan Peiffer and Erika Peiffer, the parents of minor children BMP and MMP, appeal as of right the trial court's orders entered in three different cases. In Docket nos. 347496 and 347512, the trial court denied respondents' motions to terminate limited guardianships by petitioners Thomas Schaiberger and Terry L. Schaiberger over the children. In Docket No. 347494, the trial court awarded legal custody of BMP and MMP to both petitioners and respondents, but awarded sole physical custody of the children to petitioners, who are Erika's parents and the children's grandparents. We affirm in each appeal.

In February 2016, respondents petitioned the trial court to appoint petitioners as temporary guardians for BMP and MMP. Respondents alleged that they were unable to care for the children because of their drug addictions. The trial court appointed petitioners as guardians for each child and adopted a guardianship placement plan. As most recently amended by the court on April 11, 2017, the guardianship plan provided, in pertinent part, that the guardianships were to continue until respondents: (1) could provide a drug-free household; (2) successfully completed inpatient or outpatient treatment; (3) cooperated with substance abuse assessments and followed the recommendations; (4) cooperated with psychological evaluations, followed the assessments, and successfully completed psychological counseling; and, (5) submitted to weekly drug screenings.

In May 2018, respondents moved to terminate the limited guardianships on the grounds that they had substantially complied with the requirements of the guardianship placement plans. Petitioners opposed respondents' motion to terminate the guardianships and also filed their own motion for sole legal and physical custody of the children. Following an evidentiary hearing, the trial court found that respondents had not substantially complied with the terms of the guardianship placement plans, and therefore denied their motion to terminate the guardianships. The trial court also found that clear and convincing evidence established that it was in the children's best interests to award respondents and petitioners joint legal custody of the children, but to award petitioners sole physical custody of the children. This appeal ensued.

Respondents first argue that the trial court erred by denying their motion to terminate the limited guardianships. Respondents contend they had substantially complied with the guardianship placement plans. We disagree.

-2-

Generally, a trial court's findings of fact may not be set aside unless clearly erroneous. MCR 2.613(C); *Gumma v D & T Constr Co*, 235 Mich App 210, 221; 597 NW2d 207 (1999). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed." *Id*. Questions regarding statutory interpretation are reviewed de novo. *Lee v Robinson*, 261 Mich App 406, 408; 681 NW2d 676 (2004).

MCL 700.5209(1) provides:

> After notice and hearing on a petition under section 5208 to terminate a limited guardianship, the court shall terminate the limited guardianship if it determines that the minor's parent or parents have substantially complied with the limited guardianship placement plan. The court may enter orders to facilitate the minor's reintegration into the home of the parent or parents for a period of up to 6 months before the termination.

The statute does not define "substantially complied." Therefore, it is appropriate to consider "dictionary definitions to aid in the general goal of construing the term in accordance with its ordinary meaning and generally accepted use." *Lee*, 261 Mich App at 409-410. According to Merriam-Webster's Collegiate Dictionary (11th ed), "substantial" means, in relevant part, "consisting of or relating to substance[;]" "not imaginary or illusory[;]" "important, essential[;]" and "being largely but not wholly that which is specified[.]" Therefore, to establish substantial compliance, the degree of respondents' compliance or actions in conformance with the placement plans' terms must have been considerable ("largely"), but need not have constituted strict compliance.

Under the guardianship placement plans, as most recently amended on April 11, 2017, the guardianships were to continue until respondents: (1) could provide a drug-free household; (2) successfully completed inpatient or outpatient treatment; (3) cooperated with substance abuse assessments and followed the recommendations; (4) cooperated with psychological evaluations, followed the assessments, and successfully completed psychological counseling; and, (5) submitted to weekly drug screenings.

The trial court found that respondents obtained substance abuse assessments, but they did not cooperate because they provided incomplete information. This finding is supported by testimony from William Shauman, who testified that he conducted substance abuse disorder assessments of respondents in June 2018. Although Dylan reported that his last use was in March 2017, he did not tell Shauman that this relapse resulted in his hospitalization. Erika did not inform Shauman that she had used heroin during both of her pregnancies. Shauman indicated that Erika's information was not necessarily relevant today because of respondents' progress, but that Dylan's information would have been significant. Thus, the court's finding is not clearly erroneous. The trial court's related finding, that respondents had not previously honestly reported the extent of their substance abuse before this assessment, is supported by testimony from Erika's counselor, Mary Spradling, who acknowledged that she had written a letter on Erika's behalf in December 2016 in which she reported that Erika was doing well, but that Erika had not informed her that she had a lengthy relapse in November 2016 (that Spradling only learned about in early 2018). Respondents also met with Dr. Tracey Allan, Ph.D., in April

2018 for psychological assessments. Both respondents admitted that they had not informed Dr. Allan about the extent and seriousness of their ongoing struggle with addiction. Erika did not tell Dr. Allan that she had intended to use heroin with Dylan in March 2017, but was thwarted only because of his sudden overdose. Dylan did not inform Dr. Allan about his overdose, or the fact that his discharge from his previous job as a nurse was related to missing medications.

The trial court also found that respondents had not completed the aftercare treatment requirement of their inpatient treatment programs and had not followed the recommendations of the substance abuse assessment or the psychological evaluation. This finding was based in part on the fact that respondents did not start specific substance abuse counseling until the beginning of November 2018. Respondents maintain that this was not a specific requirement of the guardianship placement plan, but instead Dr. Allan's (who prepared the belated psychological assessment) recommendation that respondents continue outpatient treatment in her report. Moreover, during the hearing Dr. Allan recommended that respondents attend substance abuse counseling, or at least counseling with persons trained in substance abuse counseling. She explained that this was necessary in this case because deception is part of addiction and substance abuse counselors are trained about this personality trait, enabling them to dig deeper to obtain the truth. Given respondents' history of deception concerning the extent of their addiction and past relapses, the trial court did not clearly err when it found that respondents' lack of benefit from specific substance abuse counseling supported a finding that they had not yet substantially complied with their guardianship placement plans. In addition, respondents' relapses in 2016 and 2017 support a finding that they had not "successfully" completed their earlier inpatient/outpatient treatment. The trial court could also reasonably find that respondents had not followed the recommendations of the substance abuse assessments where the assessments themselves were flawed because of respondents' lack of cooperation or honesty about their past conduct or relapses.

Respondents also complain that it was unfair for the trial court to find that they were merely checking items off the list to regain custody of the children. Although respondents are correct that they were required to comply with a list of requirements under the guardianship placement plans, they overlook the purpose of substantial compliance. The placement plans listed actions that respondents were to complete, but the stated purpose of the limited guardianships, or the reasons they were put in place, was to have petitioners care for the children while respondents successfully recovered from their addictions to enable them to resume caring for the children. Without a showing that respondents actually benefited from the items in the plan, this "essential" purpose was not met. Therefore, it was not improper for the trial court to consider the extent to which respondents actually benefited from their participation to decide whether they had yet substantially complied.

In sum, although respondents completed some of the requirements of the guardianship placement plans, the trial court did not clearly err when it found that they had not yet substantially complied with the plans so as to warrant termination of the limited guardianships under MCL 700.5209(1).

Respondents next argue that petitioners lacked standing to seek custody of the children. We disagree. Petitioners sought custody of the children pursuant to MCL 722.26b,[2] which states, in pertinent part:

> (1) Except as otherwise provided in subsection (2), a guardian or limited guardian of a child has standing to bring an action for custody of the child as provided in this act.

> (2) A limited guardian of a child does not have standing to bring an action for custody of the child if the parent or parents of the child have substantially complied with a limited guardianship placement plan regarding the child entered into as required by section 5205 of estates and protected individuals code, 1998 PA 386, MCL 700.5202, or section 424a of former 1978 PA 642.

Therefore, the question of standing depends on whether respondents substantially complied with the guardianship placement plans. Having concluded that the trial court did not err when it found that respondents had not substantially complied with the guardianship placement plans, we reject respondents' argument that petitioners did not have standing to seek custody of the children.

Respondents next argue that the trial court erred when it found that petitioners had established by clear and convincing evidence that physical custody of the children should be awarded to petitioners. We disagree.

In child custody disputes, "all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of the evidence or committed a palpable abuse of discretion or a clear legal error on a major issue." MCL 722.28.

> The trial court's factual findings on matters such as . . . the best-interests factors are reviewed under the great weight of the evidence standard and will be affirmed unless the evidence clearly preponderates in the opposite direction . . . . A trial court's discretionary rulings, such as the court's determination on the issue of custody, are reviewed for an abuse of discretion. [*Sinicropi v Mazurek*, 273 Mich App 149, 155; 729 NW2d 256 (2006) (citations and quotation marks omitted).]

In the context of custody disputes, "an abuse of discretion exists when the result is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of

---

[2] Respondents also assert that petitioners lacked standing to bring an action for custody under MCL 722.26c, which applies where (1) a child has been placed for adoption with a third party, or (2) the child's biological parents are not married, the custodial parent dies, the noncustodial parent has not been granted legal custody, and the third party is related to the child. Because petitioners did not bring their motion for custody under this statute, it is inapposite and respondents' reference to it is misplaced.

judgment, or the exercise of passion or bias." *Sulaica v Rometty*, 308 Mich App 568, 577; 866 NW2d 838 (2014).

MCL 722.25(1) provides:

If a child custody dispute is between the parents, between agencies, or between third persons, the best interests of the child control. If the child custody dispute is between the parent or parents and an agency or a third person, the court shall presume that the best interests of the child are served by awarding custody to the parent or parents, unless the contrary is established by clear and convincing evidence.

Therefore, a third party seeking custody "must establish by clear and convincing evidence that it is not in the child's best interests under the factors specified in MCL 722.23 for the parent to have custody." *Hunter v Hunter*, 484 Mich 247, 265; 771 NW2d 694 (2009).

The factors specified in MCL 722.23 are as follows:

As used in this act, "best interests of the child" means the sum total of the following factors to be considered, evaluated, and determined by the court:

(a) The love, affection, and other emotional ties existing between the parties involved and the child.

(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(f) The moral fitness of the parties involved.

(g) The mental and physical health of the parties involved.

(h) The home, school, and community record of the child.

(i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents. A court may not consider negatively for the purposes of this factor any reasonable action taken by a parent to protect a child or that parent from sexual assault or domestic violence by the child's other parent.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(l) Any other factor considered by the court to be relevant to a particular child custody dispute.

The trial court found that factors (a), (b), (c), (d), (f), and (h) favored petitioners. Respondents do not challenge the trial court's underlying factual determinations regarding the best-interest factors. Instead, they argue that these factors favored petitioners only because of respondents' past conduct related to their drug addictions, or because the children have been in placement with petitioners for the last three years pursuant to the limited guardianships. Respondents suggest that by denying them physical custody of the children, they are essentially being unfairly punished for having acted in the children's best interests when they initiated the guardianship in the first instance.

Respondents should be commended for their recognition that their addictions prevented them from providing proper care and custody of the children, and for their decision to place the children in the limited guardianships. However, it is inapt for respondents to argue that they were somehow being punished for their past conduct, or that petitioners were somehow being rewarded for caring for the children the previous three years. The focus of the statutory best-interest factors is on the best interests of the *children*. There is no indication that the trial court endeavored to punish respondents or reward petitioners. Rather, it considered respondents' and petitioners' conduct and histories only as it related to the *children's* best interests. Respondents essentially ignore their failure to substantially comply with the guardianship placement plans and how their actions led to the trial court's findings. Some of respondents' actions and decisions while the children remained with petitioners extended the guardianship period. These include respondents' relapses, their lack of honesty with healthcare providers, and their decision not to start substance abuse counseling earlier. Respondents' decision to leave West Branch and move to Wayland, coupled with their intent to move the children away from their school, medical providers, and support system also contributed to the trial court's findings that some of the best-interest factors favored petitioners. The court did not unfairly punish respondents for choosing to initiate the guardianships.

Respondents also appear to argue that the trial court's reliance on the children's established custodial environment with petitioners was improper because of the parental presumption in MCL 722.25(1). Respondents cite our Supreme Court's decision in *Hunter* in support of this argument, but *Hunter* does not prohibit a trial court from considering a child's

established custodial environment when parents and third parties are vying for custody. *Hunter* involved the interplay between the parental presumption in MCL 722.25(1) and the established custodial environment presumption in MCL 722.27(1)(c).[3] *Hunter*, 484 Mich at 276. The *Hunter* Court found that the parental presumption in MCL 722.25(1) controls. *Id*. at 263. However, the Court also preserved the trial court's ability to determine whether an established custodial environment exists when deciding whether clear and convincing evidence has been presented to overcome the parental presumption. The Court stated:

> In order to make this showing [by clear and convincing evidence that custody with defendant does not serve the children's best interests], plaintiffs must prove that "all relevant factors, including the existence of an established custodial environment and all legislatively mandated best interest concerns within [MCL 722.23], taken together clearly and convincingly demonstrate that the child's best interests require placement with the third person." [*Id*. at 279, quoting *Heltzel*, 248 Mich App at 27.]

"In this way, the established custodial environment is still given weight in the court's analysis and ultimate decision." *Id*. at 279 n 65. Thus, it was not improper for the trial court to consider the effects of the children's established custodial environment with petitioners, along with the best-interest factors, when deciding the issue of custody. The trial court properly recognized that it was required to apply the clear and convincing evidence standard in deciding whether it was in the children's best interests to award petitioners physical custody of the children. Respondents have not shown that the trial court erred or otherwise abused its discretion when it awarded petitioners physical custody of the children.

Affirmed.


/s/ Cynthia Diane Stephens
/s/ Deborah A. Servitto
/s/ Amy Ronayne Krause

---

[3] MCL 722.27(1)(c) provides, in pertinent part, that in custody disputes, "[t]he court shall not modify or amend its previous judgments or orders or issue a new order so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child."