CITY OF PORT HURON v AMOCO OIL COMPANY, INC

Docket No. 187422. Submitted February 17, 1998, at Detroit. Decided May 19, 1998, at 9:00 A.M. Leave to appeal sought.

The city of Port Huron brought an action in the St. Clair Circuit Court against the Amoco Oil Company, Inc., and the Grand Trunk Western Railroad, seeking to recover the costs that it had incurred in cleaning up contamination from a property that had been formerly owned by the defendants. Following a bench trial, the court, Peter E. Deegan, J., entered a judgment for the plaintiff, finding that the plaintiff was entitled to recover pursuant to § 12(2)(b) of the Michigan Environmental Response Act (MERA), MCL 299.612(2)(b); MSA 13.32(12)(2)(b), the reasonable costs that it had incurred in cleaning up the site and that the plaintiff's remediation of the site was reasonable and appropriate and was accomplished in an appropriate fashion. The court, however, ruled that the plaintiff was not entitled to recover attorney fees. The defendants appealed, and the plaintiff cross appealed.

The Court of Appeals *held*:

1. Under § 12(2)(b) of the MERA, a potentially responsible person is liable for any "necessary" response activity costs incurred "by any other person consistent with rules relating to the selection and implementation of response activity promulgated under" the MERA. A local unit of government is a person within the meaning of the MERA and is thus treated as a private person whose claim for response activity falls under § 12(2)(b).

2. Although the term "necessary" was not defined in the MERA, the statutory scheme makes it evident that with respect to response activities undertaken after the promulgation of the administrative rules the Legislature intended that "necessary costs of response activity" mean those response activity costs that are "required" in the remediation of a contaminated site, rather than those costs that were "reasonable."

3. Although § 12(2)(b) of the MERA permitted a private individual to recover necessary response activity costs that were "incurred . . . consistent with rules" promulgated pursuant to the MERA, the administrative rules concerning the preparation of a remedial investigation plan, a feasibility study, and a remedial action plan,

1990 AACS R 299.5511, R 299.5513(1), R 299.5515(1), are permissive rather than mandatory. Although the general intent of the MERA was similar to that of the federal statutory scheme under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 USC 9601 *et seq.*, a private claim for response activity costs pursuant to § 12(2)(b) of the MERA differed from a similar action under the federal scheme in that a remedial investigation or feasibility study need not necessarily have been filed as a prerequisite for the bringing of an action to recover remediation costs. Accordingly, the trial court properly rejected the defendants' assertion that the plaintiff failed to establish a prima facie case as a result of not having performed a remedial investigation, a feasibility study, and a remedial action plan.

4. Although the trial court applied the wrong legal standard for a claim brought under § 12(2)(b) by apparently finding that the plaintiff was entitled to only those response activity costs that had been reasonably incurred rather than those that had been incurred consistent with the administrative rules, the court's adoption of that wrong legal standard was harmless. Because the court held the plaintiff to a higher standard of proof than was required by statute, the error did not harm the defendants, and because the court did not reject any of the plaintiff's claimed costs on the basis that they were not reasonable, the error did not harm the plaintiff.

5. The court's finding that the costs associated with the removal of 22,000 cubic yards of soil from the site were necessary costs of the response activity was not clearly erroneous.

6. The court properly refused to award attorney fees to the plaintiff. Attorney fees are not awardable absent a statute, rule, or contractual provision providing for the reimbursement of attorney fees. Although the reasonable attorney fees of the Attorney General can be recovered pursuant to MCL 299.603(i); MSA 13.32(3)(i) as part of the enforcement costs component of the response activity costs, there is no similar authorization of attorney fees incurred by a private party bringing a claim for recovery of response activity costs.

Affirmed.

1. ENVIRONMENT — ENVIRONMENTAL RESPONSE ACT — RESPONSE ACTIVITY COSTS — ACTIONS — PRIVATE PARTIES — NECESSARY COSTS.

The necessary response activity costs that may be recovered by a private party in an action brought under the Environmental Response Act are those costs that are required by remediation consistent with the administrative rules promulgated pursuant to that act (MCL 299.612[2][b]; MSA 13.32[12][2][b]).

2. ENVIRONMENT — ENVIRONMENTAL RESPONSE ACT — RESPONSE ACTIVITY COSTS — ACTIONS — PRIVATE PARTIES — ATTORNEY FEES.

A private party who brings an action to recover response activity costs under the Environmental Response Act is not entitled to recover attorney fees incurred in the bringing of the action (MCL 299.612[2][b]; MSA 13.32[12][2][b]).

*Fletcher DeGrow* (by *Gary A. Fletcher* and *John D. Tomlinson*), for the plaintiff.

*Dykema Gossett, PLLC* (by *Joseph C. Basta, Kathleen McCree Lewis,* and *Jeffrey S. Jones*), for Amoco Oil Company, Inc.

*Bodman, Longley & Dahling, LLP* (by *R. Craig Hupp*), for Grand Trunk Western Railroad.

Before: CORRIGAN, C.J., and JANSEN and WHITBECK, JJ.

PER CURIAM. Following a bench trial, defendants appeal as of right from the judgment awarding plaintiff approximately $1.25 million in a private cost recovery action under the Michigan Environmental Response Act (MERA), MCL 299.601 *et seq.*; MSA. 13.32(1) *et seq.*, while plaintiff cross appeals the order denying its motion for attorney fees.[1] We affirm.

I

On appeal, defendants first argue that the trial court erred in failing to rule that under the MERA,

---

[1] The instant action arises under the MERA as amended in 1990. 1994 PA 451 recodified the MERA as Part 201 of the Natural Resources and Environmental Protection Act (NREPA), MCL 324.20101 *et seq.*, MSA 13A.20101 *et seq.*, which became effective March 30, 1995. *Cipri v Bellingham Frozen Foods, Inc*, 213 Mich App 32, 36; 539 NW2d 526 (1995); 1 Michigan Environmental Law Deskbook (1997 Supp), § 6.36, p 6-96. Pursuant to MCL 324.99903; MSA 13A.99903, the powers of the Environmental Response Division of the Michigan Department of National Resources (MDNR), as set forth in the NREPA, were transferred to the newly created Department of Environmental Quality, effective October 1, 1995.

plaintiff could not recover the costs incurred in voluntarily remediating contamination on the property formerly owned by defendants (the Amoco site) unless plaintiff proved that it complied with the Michigan Department of Natural Resources (MDNR) rules governing the selection and implementation of remedial measures.

A

As recognized by this Court in *Flanders Industries, Inc v Michigan*, 203 Mich App 15, 20-21; 512 NW2d 328 (1993):

> The MERA, 1982 PA 307, as amended by 1987 PA 166, 1989 PA 157, 1990 PA 233, and 1990 PA 234 (the so-called "polluters pay" law) is a complex statutory scheme intended, in the words of its title, "to provide for the identification . . . of environmental contamination . . . [and] to provide for response activity" at such sites. Under the MERA, persons may become liable for costs ("response activity costs") incurred by the Department of Natural Resources in removing pollution. MCL 299.612; MSA 13.32(12).

The MERA sets forth five categories of potentially responsible persons (PRPs). *Farm Bureau Mut Ins Co of Michigan v Porter & Heckman, Inc*, 220 Mich App 627, 639-640; 560 NW2d 367 (1996). Section 12(1) of the MERA, MCL 299.612(1); MSA 13.32(12)(1), provided in pertinent part:

> Notwithstanding any other provision or rule of law and subject only to the defenses set forth in sections 12a and 12b, if there is a release or threatened release from a facility that causes the incurrence of response activity costs, the following persons shall be liable under his section:
> (a) The owner or operator of the facility.
> (b) The owner or operator of the facility at the time of disposal of a hazardous substance.

(c) The owner or operator of the facility since the time of disposal of a hazardous substance not included in subdivision (a) or (b).

(d) A person that by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of a hazardous substance owned or possessed by the person, by any other person, at the facility owned or operated by another person and containing the hazardous substance.

(e) A person that accepts or accepted any hazardous substance for transport to the facility selected by that person.

Before the 1990 amendments of the "polluters pay" law, the MERA authorized cost recovery actions only by the state. As amended in 1990, the MERA authorized persons other than the state (i.e., private parties) that voluntarily clean up contamination to recover their cleanup costs from PRPs provided that they comply with the provisions of § 12(2)(b). Section 12(2) provided:

A person described in subsection (1) shall be liable for:

(a) All costs of response activity lawfully incurred by the state relating to the selection and implementation of response activity under this act.

(b) *Any other necessary costs of response activity incurred by any other person consistent with rules relating to the selection and implementation of response activity promulgated under this act.*

(c) Damages for the full value of injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing the injury, destruction, or loss resulting from the release. [Emphasis provided.]

For the purposes of a cost recovery action under the MERA, a municipality is treated as a private party. Under § 3(s) of the MERA, MCL 299.603(s); MSA 13.32(3)(s) (and also the recodified sections in the

NREPA, MCL 324.20101[x]; MSA 13A.20101[x]), "[l]ocal unit of government" is defined as "a county, city, township, or village, an agency of a local unit of government, an authority or any other public body or entity created by or pursuant to state law. Local unit of government does not include the state or federal government or a state or federal agency." Because a municipality is treated as a private party for the purpose of cost recovery actions, plaintiff is thus treated as a private party whose claim falls under § 12(2)(b).[2]

B

In this case, defendants argue that the trial court erred as a matter of law because the plain language of § 12(2)(b) requires that a private party seeking recovery of the cleanup costs from the owner or operator of the facility at the time of disposal of a hazardous substance establish that the private party incurred the costs of remediation consistent with the rules promulgated under the MERA, 1990 AACS, R 299.5101 et seq., effective July 12, 1990.[3] In interpreting § 12(2)(b), defendants claim that this Court should look to federal case law interpreting the analo-

---

[2] Our review of Michigan and federal case law has not revealed a single case involving a recovery action brought by a municipality under the MERA, its successor statute, the NREPA, or the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), 42 USC 9601 et seq., its federal counterpart. See 1 Michigan Environmental Law Deskbook, § 6.71, pp 6-56—6-57.

[3] On appeal, defendants do not contest that they are subject to liability for response activity costs under § 12(1), conceding the trial court's findings that the property in question was used as a bulk oil facility storing hazardous substances (i.e., petroleum products), that there was a release of the substances, and that defendants were owners or operators of the property since the time of the release. Rather, defendants claim that plaintiff failed to prove that it had the right to recover cleanup costs from them under § 12(2)(b).

gous provision of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), as amended, 42 USC 9601 *et seq.*, for guidance.[4] See *Haworth, Inc v Wickes Mfg Co*, 210 Mich App 222, 228; 532 NW2d 903 (1995); *Stolaruk Corp v Central Nat'l Ins Co of Omaha*, 206 Mich App 444, 453; 522 NW2d 670 (1994). As defendants point out, the MERA is similar in intent to, and patterned after, the CERCLA, and both acts provide for the identification of environmental contamination and for response activity to remediate it. *Flanders Industries, supra* at 21. Further, both acts impose strict liability for cleanup costs on persons who fall within one of the enumerated categories of potentially responsible persons. MCL 299.612; MSA 13.32(12); 42 USC 9607(a). See also 1 Michigan Environmental Law Deskbook, § 6.43, pp 6-32—6-33; *Nurad, Inc v William E Hooper & Sons Co*, 966 F2d 837, 841 (CA 4, 1992); *Kelley v*

---

[4] Under the CERCLA, the comparable provisions provide:

Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section—

(1) the owner and operator of a vessel or a facility,

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and

(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for—

(A) all costs of removal or remedial action incurred by the United States Government or a State . . . . [ 42 USC 9607a.]

*Thomas Solvent Co*, 727 F Supp 1532, 1539 (WD Mich, 1989).

Under the CERCLA, private parties have a right to recover their cleanup costs from the parties responsible for the contamination provided that the response costs were necessary and were "consistent with the national contingency plan [NCP]." 42 USC 9607(a)(4)(B); *Artesian Water Co v New Castle Co*, 659 F Supp 1269, 1278-1279 (D Del, 1987), aff'd 851 F2d 643 (CA 3, 1988). Defendants argue that federal courts have uniformly interpreted § 9607(a) to require, "as a prerequisite to cost recovery, compliance with the NCP process for identifying and selecting remedial alternatives, i.e., the RI/FS [Remedial Investigation/Feasibility Studies] process." *Channel Master Satellite Systems, Inc v JFD Electronics Corp*, 748 F Supp 373 (ED NC, 1990); *Amland Properties Corp v Aluminum Co of America*, 711 F Supp 784 (D NJ, 1989). Because the MERA is patterned after the CERCLA and has the same legislative objective, and because federal courts have generally held that consistency with the NCP is an element of the plaintiff's prima facie case on liability,[5] defendants maintain that the trial court erred in failing to rule that plaintiff could recover its response costs under § 12(2)(b) of the MERA only if it proved that the costs were incurred consistent with the MDNR rules for the selection and implementation of response activity. Because plaintiff

---

[5] To establish a prima facie case under the CERCLA, a plaintiff must show that (1) a release of hazardous substances has occurred, (2) at a facility, (3) causing a plaintiff to incur response costs, and (4) the defendant is a responsible party. *CPC Int'l, Inc v Aerojet-General Corp*, 777 F Supp 549, 570 (WD Mich, 1991), aff'd in part and rev'd in part on other grounds sub nom *United States v Cordova Chemical Co of Michigan*, 59 F3d 584 (CA 6, 1995).

did not establish that it performed a remedial investigation and a feasibility study consistent with the MDNR rules, defendants thus argue that plaintiff failed to establish a prima facie case showing that it was entitled to the recovery of its response activity costs.

C

At the outset, we begin with the observation that the interpretation of § 12(2)(b) presents an issue of first impression, because no Michigan appellate court has addressed this particular subsection in a published case. Statutory interpretation is a question of law that is reviewed de novo on appeal. *Smeets v Genesee Co Clerk*, 193 Mich App 628, 633; 484 NW2d 770 (1992). The primary goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature. *Farrington v Total Petroleum, Inc*, 442 Mich 201, 212; 501 NW2d 76 (1993); *Forest City Enterprises, Inc v Leemon Oil Co*, 228 Mich App 57, 64; 577 NW2d 150 (1998). The first criterion in determining intent is the specific language of the statute. *House Speaker v State Administrative Bd*, 441 Mich 547, 567; 495 NW2d 539 (1993). If the plain and ordinary meaning of the language is clear, judicial construction is normally neither necessary nor permitted. *Lorencz v Ford Motor Co*, 439 Mich 370, 376; 483 NW2d 844 (1992); *Heinz v Chicago Rd Investment Co*, 216 Mich App 289, 295; 549 NW2d 47 (1996). However, if reasonable minds can differ regarding the meaning of a statute, judicial construction is appropriate. *Id.*

At first blush, § 12(2)(b) appears to have been anything but a model of clarity. The subsection provided, in pertinent part, that a PRP shall be liable to a private

party for its "necessary costs of response activity incurred . . . consistent with the rules . . . promulgated under this act." The rules that the MDNR promulgated pursuant to this act are the remedial requirements of the Environmental Contamination Response Activity Rules, 1990 AACS, R 299.5101 *et seq.* Thus, to recover its cleanup costs from a party responsible for the pollution, a private party must show that its "response activity" costs were (1) "necessary" and were incurred (2) "consistent with [the MDNR rules]."

Although the parties do not address the matter in their appeal briefs, we note that the term "necessary," as used in § 12(2)(b), was left undefined in the MERA.[6] On the other hand, the MERA defines "costs of response activity" or "response activity costs" as "all costs incurred in taking or conducting response activity, including enforcement costs." MCL 299.603(bb); MSA 13.32(3)(bb). In turn, "response activity" is defined to be

---

[6] While it is generally advisable to look to the CERCLA for guidance in interpreting the MERA, we note that the comparable phrase "necessary response costs" is also not precisely defined in the federal statute, even though the CERCLA does provide that "response" means "remove, removal, remedy and remedial action . . . includ[ing] enforcement activities related thereto," 42 USC 9601(25), does define "remove" and "removal" as

> the cleanup or removal of released hazardous substances from the environment, such actions as may be necessary taken in the event of the threat of release of hazardous substances into the environment, such actions as may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances, the disposal of removed material, or the taking of such other actions as may be necessary to prevent, minimize, or mitigate damage to the public health or welfare or to the environment, which may otherwise result from a release or threat of release. [42 USC 9601(23).]

Notwithstanding, federal courts have tended to interpret "necessary response costs" broadly. *Rhodes v Darlington Co*, 833 F Supp 1163, 1188 (D SC, 1992) (see cases cited therein).

evaluation, interim response activity, remedial action, or the taking of other actions necessary to protect the public health, safety, or welfare, or the environment, or the natural resources. Response activity also includes health assessments or health effect studies carried out under the supervision, or with the approval of, the department of public health, and enforcement actions related to any response activity. [MCL 299.603(aa); MSA 13.32(3)(aa).]

In the absence of a statutory definition of "necessary" as used in § 12(2)(b), we may resort to dictionary definitions to elucidate the meaning of the word. *Lumley v Univ of Michigan Bd of Regents*, 215 Mich App 125, 130; 544 NW2d 692 (1996). Black's Law Dictionary (5th ed) defines "necessary" in various ways:

> This word must be considered in the connection in which it is used, *as it is a word susceptible of various meanings*. It may import absolute physical necessity or inevitability, or it may import that which is only convenient, useful, appropriate, suitable, proper or conducive to the end sought. It is an adjective expressing degrees, and may express mere convenience or that which is indispensable or an absolute physical necessity. It may mean something which in the accomplishment of a given object cannot be dispensed with, or it may mean something reasonably useful and proper, and of greater or lesser benefit or convenience, and its force and meaning must be determined with relation to the particular object sought. [Emphasis provided.]

See also *Shumake v Travelers Ins Co*, 147 Mich App 600, 608; 383 NW2d 259 (1985). Given the range of possible meanings, "necessary," as used in § 12(2)(b), could strictly mean those costs that are "required" or could more loosely mean those costs that are "appropriate," "reasonable," or "suitable," in remediating a site to protect "the public health, safety, or welfare, or the environment, or the natural resources."

In deciding whether to interpret "necessary" as used in § 12(2)(b) broadly or narrowly, it is advisable to read § 12(2) in conjunction with § 12(3), which provides:

> The costs of response activity recoverable under subsection (2) shall also include:
>
> (a) All costs of response activity reasonably incurred by the state prior to the promulgation of rules relating to the selection and implementation of response activity under this act, excepting those cases where cost recovery actions have been filed before July 11, 1990. A person challenging the recovery of costs under this subdivision shall have the burden of establishing that the costs were not reasonably incurred under the circumstances that existed at the time the costs were incurred. Recoverable costs include costs incurred reasonably consistent with the rules relating to the selection and implementation of response activity in effect on July 11, 1990.
>
> (b) Any other necessary costs of response activity reasonably incurred by any other person prior to the promulgation of rules relating to the selection and implementation of response activity under this act. A person seeking recovery of these costs has the burden of establishing that the costs were reasonably incurred under the circumstances that existed at the time the costs were incurred.

Under the statutory scheme set forth in subsections 2 and 3, the state and private parties are subject to different standards depending on whether the remediation took place before or after the promulgation of the administrative rules relating to the selection and implementation of response activity that became effective on July 12, 1990. Under § 12(3)(a), a PRP shall be liable to the state for "[a]ll costs of response activity *reasonably* incurred by the state prior to the promulgation of rules relating to the selection and implementation of response activity

under this act." (Emphasis provided.) Moreover, the burden of proving whether the costs were reasonably incurred by the state in a cost recovery action before the promulgation of the rules falls upon the PRP challenging the recovery action. However, after the promulgation of the administrative rules on July 12, 1990, a cost recovery action brought by the state is governed by § 12(2)(a), which subjects a PRP to liability for "[a]ll costs of response activity *lawfully* incurred by the state." (Emphasis provided.) Presumably, the burden of proving whether the state's recovery costs were lawfully incurred also falls upon the PRP challenging the recovery action, although § 12(2)(a) does not expressly state this.

As for cost recovery actions brought by private parties, § 12(3)(b) applies to response activity undertaken before the promulgation of the rules on July 12, 1990. Under § 12(3)(b), a PRP shall be liable for "[a]ny other *necessary* costs of response activity *reasonably* incurred" (emphasis provided) by a private party before the promulgation of the rules. In contrast to cost recovery actions brought by the state before the promulgation of the rules, a private party has the burden of proving that its "necessary costs of response activity" were reasonably incurred before the promulgation of the rules. However, after the administrative rules became effective on July 12, 1990, recovery of cleanup costs incurred by a private party is governed by the standard set forth in § 12(2)(b), which subjects a PRP to liability for "[a]ny other necessary costs of response activity incurred" by a private party that is "consistent with the rules relating to the selection and implementation of response activity promulgated under this act."

A close examination of the statutory scheme in question reveals that the Legislature relaxed the standards governing cost recovery actions after the promulgation of the rules. While a PRP is liable to the state for response activity costs that were "reasonably incurred" before the promulgation of the rules unless the PRP could show otherwise, a PRP is liable to the state for all recovery costs that were "lawfully incurred" after the promulgation of the rules, presumably unless the PRP could show otherwise. On the other hand, while a private party must establish that its "necessary costs of response activity [were] reasonably incurred" before the promulgation of the rules, a private party must only show that its "necessary costs of response activity [were] incurred . . . consistent with [the] rules" after the rules were promulgated on July 12, 1990.

In so doing, it is clear that the Legislature sought to distinguish the "necessary" from "reasonable" and its cognates, as they are used in subsections 2 and 3. By allowing a private party, under § 12(3)(b), to recover its "necessary costs of response activity reasonably incurred" before the promulgation of the rules, while permitting a private party, under § 12(3)(a) to recover its "necessary costs of response activity incurred" that are consistent with the rules after their promulgation, it is evident that the Legislature intended "necessary" to have a different meaning than "reasonable." *Farrington, supra* at 210. Thus, we construe ·the phrase "necessary costs of response activity" to mean those response activity costs that are "required" in remediating a contaminated site to protect the public health, safety, or welfare, or the environment, or the natural resources. As defined by the MERA, then, the

kinds or types of response activity costs that are necessary in remediating a contaminated site cover a wide range of activities, including "evaluation, interim response activity, remedial action, or the taking of other actions necessary to protect the public health, safety, or welfare, or the environment, or the natural resources." MCL 299.603(aa); MSA 12.32(3)(aa).

In addition, a private party in a cost recovery action under § 12(2)(b) must show that its "necessary costs of response activity" were incurred consistent with the MDNR rules that went into effect on July 12, 1990. 1990 AACS, R 299.5101 *et seq.* Specifically, Rule 511, 1990 AACS, R 299.5511, provides in pertinent part:

> (1) The department [MDNR] may request that a remedial investigation[7] be conducted, consistent with this part and sufficient to support determinations pursuant to parts 6 and 7 of these rules, at any site where response activities are to be undertaken.
>
> (2) The department may request the preparation and approval of a remedial investigation plan before the initiation of a remedial investigation.

Rule 513(1), 1990 AACS, R 299.5513(1), similarly provides that "[t]he department may request that a feasi-

---

[7] Although "remedial investigation" is not defined in the MERA, the statute provides:

> "Remedial action" includes, but is not limited to, cleanup, removal, containment, isolation, destruction, or treatment of a hazardous substance released or threatened to be released into the environment, monitoring, maintenance, or the taking of other actions that may be necessary to prevent, minimize, or mitigate injury to the public health, safety, or welfare, or to the environment. [MCL 299.603(y); MSA 13.32(3)(y).]

Rule 511 further provides the factors that a remedial investigation plan should follow, as appropriate to the site.

bility study[8] be conducted at a site where final response activities are to be undertaken." Likewise, Rule 515(1), 1990 AACS, R 299.5515(1), provides, in pertinent part, that "[t]he department may request that a remedial action plan[9] be developed for any remedial action undertaken pursuant to the provisions of these rules and be submitted to the department for approval."

Because the rules of statutory construction also apply to administrative rules, *Attorney General v Lake States Wood Preserving, Inc*, 199 Mich App 149, 155; 501 NW2d 213 (1993), the plain language of the MDNR rules in question clearly shows that the MDNR has the discretion to require a private party to complete a remedial investigation, a remedial action plan, or a feasibility study before undertaking the cleanup of a contaminated site. While the word "shall" is generally used to designate a mandatory provision, "may" designates discretion. *Jordan v Jarvis*, 200 Mich App 445, 451; 505 NW2d 279 (1993). Put in other terms, the MDNR rules are permissive, not mandatory.

Moreover, we note that the MDNR itself interprets these rules to be permissive, not mandatory. At trial, the MDNR representative testified that, absent a request by the MDNR, a private party was not required to complete a formal, written remedial investigation, a feasibility study, or a remedial action. Given that courts give great weight to any reasonable construc-

---

[8] "Feasibility study" is defined as "a process for developing, evaluating, and selecting appropriate response activities." MCL 299.603(n); MSA 13.32(3)(n). Rule 513 lists the factors that a feasibility study must contain as appropriate to the site.

[9] "Remedial action plan" is defined as "a work plan for performing remedial action under this act. MCL 299.603(z); MSA 13.32(3)(z). The elements that must be included in a remedial action are set forth in Rule 515.

tion of a statute adopted by the agency legislatively chosen to enforce it, especially when the agency's interpretation accords with the plain meaning of the statute, *Reo v Lane Bryant, Inc*, 211 Mich App 364, 366; 536 NW2d 556 (1995), we conclude that the MDNR rules relating to the completion of a remedial investigation, a remedial action plan, or a feasibility study by a private party should be interpreted as permissive, not mandatory, rules.

D

In light of the foregoing analysis, we conclude that, contrary to defendants' contention, the trial court did not err in declining to interpret the cost recovery provision under § 12(2)(b) of the MERA in accordance with federal court decisions interpreting the CERCLA. As plaintiff points out, although the general intent of the MERA is similar to that of the CERCLA, our Legislature, in enacting the MERA, sought to provide a state remedy that was more responsive to environmental contamination than the CERCLA, its federal counterpart, providing private parties conducting voluntary cleanups with the right to collect their cleanup costs in remediating contaminated sites from parties responsible for the contamination. Specifically, the legislative history indicates that the MERA was amended, in part, "to expedite cleanup of sites of contamination by providing the DNR with enforcement tools necessary to compel compliance with the act and by providing penalties and positive incentives to encourage polluters to pay for, and promptly implement, cleanup." See House Legislative Analysis, HB 5878, September 12, 1990. Consistent with this legislative objective, § 12(2)(b) thus differs from its federal

counterpart in a crucial respect by affording a private party greater flexibility in recovering its cleanup costs from a responsible party. Significantly, while private parties seeking recovery of "necessary response costs" in a voluntary cleanup under the CERCLA must strictly comply with the NCP process, *Channel Master Satellite Systems, Inc, supra; Amland Properties Corp, supra,* the MERA does not contain similar restrictions. See 1 Michigan Environmental Law Deskbook, § 6.62, pp 6-50—6-51. Although federal courts have strictly construed the NCP's requirements as mandatory in a private cost recovery action under the CERCLA, the MDNR rules are permissive under the MERA. For that reason, we agree with plaintiff that federal case law construing the CERCLA and the NCP is inapposite to this case, and thus reject any suggestion by defendants to graft these federal requirements onto the construction of the MERA.

Accordingly, we conclude that under § 12(2)(b) of the MERA, a private party is entitled to recover its cleanup costs from a PRP for remediating a contaminated site, provided that it proves that its cleanup costs were "necessary" and were incurred consistent with the MDNR rules. Because the MDNR rules are permissive, not mandatory, a private party in a cost recovery action under § 12(2)(b) did not have to establish that it performed a remedial investigation, a remedial action plan, or a feasibility study if the MDNR does not require them. Because the MDNR determined that plaintiff was not required to complete a remedial investigation, a remedial action plan, or a feasibility study in this case, the trial court did not err in ruling

that plaintiff was entitled to recover its cleanup costs under the MERA.[10]

## II

Defendants also claim, and plaintiff agrees, that the trial court erred in applying the wrong legal standard in determining plaintiff's claim for recovery costs under the MERA by reading a "reasonable" requirement into § 12(2)(b). We agree.

In its oral opinion from the bench, the trial court concluded, in pertinent part, that "it was *reasonable and appropriate* in 1991 for the City in developing this residential condo project to remediate the contaminated Amoco site to a Type A closure for the protection of the public health and environment, and the City did so within the established rules and criteria of MERA and the DNR"; "that Amoco's contamination *required* remediation and this was *accomplished in an appropriate fashion* in keeping with the proper environmental standards"; and that "it's my responsibility to see to it that Amoco only gets tagged for the *reasonable* costs that relate to the completion of the

---

[10] In so holding, we do not need to reach the question whether plaintiff actually completed a remedial investigation, a remedial action plan, and a feasibility study as defined by the MDNR. Further, because plaintiff established that its "necessary costs of response activity" were incurred consistent with the MDNR rules, we do not need to consider the question whether compliance with the MDNR rules is an element of liability or damages in a cost recovery action under the MERA. We note that most federal courts have viewed the requirement of compliance with the NCP process as an element of liability in cost recovery actions brought under the CERCLA. See *Pierson Sand & Gravel, Inc v Pierson Twp*, 851 F Supp 850, 855 (WD Mich, 1994), aff'd 89 F3d 835 (CA 6, 1996); *Sherwin-Williams Co v Hamtramck*, 840 F Supp 470, 474 (ED Mich, 1993); *Channel Master Satellite Systems, Inc, supra; Amland Properties Corp, supra; Artesian Water Co, supra;* cf. *Northwestern Mut Life Ins Co v Atlantic Research Corp*, 847 F Supp 389, 400 (ED Va, 1994) (consistency with NCP was found to be an element of damages).

remediation *as was required here.*" (Emphasis provided.)

In its ruling, the trial court appeared to apply the standard set forth in § 12(3)(b), which applies to the cleanup costs incurred by a private party before July 12, 1990 (i.e., before the MDNR rules became effective), rather than the standard set forth in § 12(2)(b) that is applicable to the costs of a private recovery action after the promulgation of the rules. While the trial court properly found that plaintiff's recovery costs constituted "necessary costs of response activity" because these costs were required to remediate the contaminated site, the court also concluded that plaintiff's costs were reasonably incurred by observing that "it was reasonable and appropriate" for plaintiff to remediate the contaminated property to a type A closure and that "this was accomplished in an appropriate fashion in keeping with the proper environmental standards."

Although the trial court erred in applying the standard set forth in § 12(3)(b), the error was harmless to both sides. Contrary to defendants' claim, the error was harmless because the trial court subjected plaintiff's cost recovery action to a higher standard of proof, requiring that plaintiff show that its "necessary costs of response activity" were "reasonably incurred," rather than merely "incurred" consistent with the MDNR rules. At the same time, the error was also harmless to plaintiff because the trial court properly excluded $100,000 of plaintiff's costs on the ground that those costs were not related to the remediation of the site (i.e., those costs were not "necessary costs of response activity"), not on the ground that those costs were unreasonably incurred.

III

Finally, defendants contend that the trial court clearly erred in its findings of fact that defendants are liable to plaintiff under the MERA. This Court reviews the findings of fact by a trial court sitting without a jury under the clearly erroneous standard. MCR 2.613(C); *Tuttle v Dep't of State Hwys*, 397 Mich 44, 46; 243 NW2d 244 (1976); *Giordano v Markovitz*, 209 Mich App 676, 678-679; 531 NW2d 815 (1995). A finding is clearly erroneous when " 'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' " *Tuttle, supra* at 46, quoting *United States v United States Gypsum Co*, 333 US 364, 395; 68 S Ct 525; 92 L Ed 746 (1948).

First, defendants argue that the trial court's finding that plaintiff performed the remediation within the MERA rules was clearly erroneous. As we have already concluded, plaintiff's alleged failure to prepare a remedial investigation, a remedial action plan, or a feasibility study does not establish that plaintiff failed to comply with the MDNR rules because those rules are permissive, not mandatory, and because the MDNR did not require plaintiff to complete a remedial investigation, a remedial action plan, or a feasibility study in this case.

More troublesome is defendants' contention that the trial court erred because "the record did not demonstrate that the City's costs were 'necessary' as required by MERA," since "there was no showing that the 22,000 cubic yards of soil the City excavated was contaminated, and much evidence to show that it was clean." Defendants claim that the determination that the soil was contaminated was based upon the sight

and smell of the field employees of the environmental consultant contracted by plaintiff, that the photoionization detector [PID] readings were unreliable, and that laboratory testing, the only potentially reliable method, was not used appropriately at the site until the last two weeks of the excavation process.

While defendants presented some evidence that plaintiff might have removed soil from the site that was not contaminated, we are not left with the "definite and firm conviction" that the trial court's findings of fact in this regard were "clearly erroneous." In this case, there was substantial testimony and exhibits supporting the trial court's findings of fact that the 22,000 cubic yards of soil that plaintiff excavated was contaminated. Although defendants claim that plaintiff's environmental consultant did not use the laboratory data to direct most of the excavation work and that laboratory data proved that clean soils were excavated, the record shows that plaintiff's environmental consultant resorted to laboratory data only when field observations and PID readings led it to believe that it had reached clean soils, and that almost twenty-five percent of the samples collected under this protocol were contaminated, suggesting that its field observations and PID readings were fairly reliable. Accordingly, we find no clear error.

IV

On cross appeal, plaintiff argues that the trial court erred in ruling that plaintiff could not recover its attorney fees pursuant to the provisions of the MERA. Generally, attorney fees are not awardable absent a statute, rule, or contractual provision providing for the reimbursement of attorney fees. *Watkins v*

*Manchester*, 220 Mich App 337, 342; 559 NW2d 81 (1996).

Contrary to plaintiff's contention, § 12 of the MERA does not provide for the recovery of attorney fees in a private cost recovery action. Specifically, the definition of costs that a private party may recover under § 12(2)(b) does not include attorney fees. The MERA defines "costs of response activity" or "response activity costs" as "all costs incurred in taking or conducting response activity, including enforcement costs." MCL 299.603(bb); MSA 13.32(3)(bb). "Enforcement costs" are defined as

> court expenses, reasonable attorney fees of the attorney general, and other reasonable expenses of an executive department that are incurred in relation to enforcement under this act or rules promulgated under this act, or both. [MCL 299.603(i); MSA 13.32(3)(i).]

Given that the express definition of "enforcement costs" only provides for the recovery of "reasonable attorney fees of the attorney general" in a cost recovery action brought by the state, it is clear that the Legislature did not intend to allow private parties to recover their attorney fees in actions under § 12. *Farrington, supra* at 210. Accordingly, the trial court did not err in ruling that attorney fees were not available to plaintiff in this case. See also *Key Tronic Corp v United States*, 511 US 809; 114 S Ct 1960; 128 L Ed 2d 797 (1994), where the United States Supreme Court similarly ruled that attorney fees are not recoverable in a private cost recovery action under the CERCLA.

Affirmed.