GUMMA v D & T CONSTRUCTION COMPANY

Docket No. 207530. Submitted February 10, 1999, at Detroit. Decided April 9, 1999, at 9:30 A.M. Leave to appeal sought.

Hanna and Rehab Gumma brought an action in the Macomb Circuit Court against D & T Construction Company, Vincent DiLorenzo (hereafter defendants), and others, seeking damages resulting from the discovery of toxic substances on two subdivision lots the plaintiffs purchased from the defendants. The defendants purchased the lots and sixteen others from First Federal of Michigan, who took possession of the 117 lots in the subdivision after the developer defaulted on his mortgage. The contamination was discovered during the construction of the plaintiff's home by a third party. The plaintiffs asserted a claim under the Land Sales Act, MCL 565.801 et seq.; MSA 26.1286(1) et seq., alleging that the defendants violated the act in failing to provide them with a property report, and a claim for declaratory relief under Part 201 of the Natural Resources and Environmental Protection Act (NREPA), MCL 324.20101 et seq.; MSA 13A.20101 et seq. The court, George C. Steeh, J., entered a judgment resolving the parties' claims. The defendants appealed and the plaintiffs cross appealed.

The Court of Appeals held:

1. The trial court did not err in granting summary disposition in favor of the plaintiffs with regard to their claim under the Land Sales Act. The defendants did not show a genuine issue of material fact existed with regard to whether they were exempt from the provision of the act requiring them to provide the plaintiffs with a property report. That part of the judgment must be affirmed.

2. D & T is a "person" who made a disposition of an interest in subdivided land to purchasers for purposes of the Land Sales Act. D & T had a duty, as a matter of law, to provide the property report. The Land Sales Act does not condition a person's duty to deliver a current property report on other persons' past compliance with the requirements of the act.

3. The four exemptions from the requirement to provide a property report in MCL 565.804(a),(b),(c), and (f); MSA 26.1286(4)(a),(b),(c), and (f), are inapplicable to the defendants as a matter of law.

4. The court's factual findings with regard to the NREPA claim that the environmental contamination was caused by an act or omission of a third party who was neither an agent nor an employee of the defendants and who did not enjoy any contractual relationship with them was not clearly erroneous. However, the court erred in regard to its legal conclusion that the facts were sufficient to bring the defendants within the third-party defense found in MCL 324.20127(1)(c); MSA 13A.20127(1)(c). The court committed an error of law that requires reversal of the relevant part of its judgment in finding the third-party defense applicable without addressing the "due care" and "reasonable precautions" elements of subsections 20127(1)(c)(*i*) and (*ii*). The matter must be remanded for further findings under a correct application of the law governing the third-party defense. The burden of establishing the defense rests on the defendants, and circumstantial evidence is a permissible method for meeting a burden of proof under the preponderance of the evidence standard.

Affirmed in part, reversed in part, and remanded.

1. PROPERTY — LAND SALES ACT — SUBDIVIDED LAND — PROPERTY REPORTS — WORDS AND PHRASES — PERSON.

The duty to provide a property report stated in the Land Sales Act is imposed on a "person" making a disposition of any interest in subdivided land to a purchaser; the act defines "person," in part, as an individual, corporation, partnership, unincorporated association, two or more of any of the foregoing having a joint or common interest, or any other legal or commercial entity (MCL 565.802[1], 565.806[b]; MSA 26.1286[2][1], 26.1286[6][b]).

2. PROPERTY — LAND SALES ACT — SUBDIVIDED LAND — PROPERTY REPORTS.

The duty imposed by the Land Sales Act on a person making a disposition of any interest in subdivided land to provide a current property report is not conditioned on other persons' past compliance with the requirements of the act (MCL 565.806[b]; MSA 26.1286[6][b]).

3. PROPERTY — LAND SALES ACT — SUBDIVIDED LAND — PROPERTY REPORTS — EXEMPTIONS.

The exemption from the duty to provide a property report otherwise required by the Land Sales Act that exempts offers or dispositions of an interest in land by a purchaser of subdivided land for the purchaser's own account in a single or isolated transaction makes it unnecessary for individual lot purchasers to comply with the act when reselling the lot but does not apply to a purchaser acquiring multiple lots for resale (MCL 565.804[a]; MSA 26.1286[4][a]).

4. Property — Land Sales Act — Subdivided Land — Property Reports — Exemptions.

> The exemption from the duty to provide a property report otherwise required by the Land Sales Act that provides that the act does not apply if fewer than twenty-five separate lots, parcels, units, or interests in subdivided land are offered or to be offered after September 30, 1973, creates an exemption for certain lands subdivided but not yet sold before the October 1, 1973, effective date of the act (MCL 565.804[b]; MSA 26.1286[4][b]).

5. Property — Land Sales Act — Subdivided Land — Property Reports — Exemptions.

> The exemption from the duty to provide a property report otherwise required by the Land Sales Act regarding a disposition of an interest in land on which there is a legal obligation on the part of the seller to construct a dwelling unit within two years from the date of the sale exempts only dispositions where there is a legal obligation to build on the part of the seller, not a mere contemplation of building (MCL 565.804[c]; MSA 26.1286[4][c]).

6. Property — Land Sales Act — Subdivided Land — Property Reports — Exemptions.

> The exemption from the duty to provide a property report otherwise required by the Land Sales Act that exempts dispositions "to any person who acquires the lots for the purpose of engaging in and does engage in, or who is engaged in the business of constructing residential, commercial, or industrial buildings for the purpose of resale" focuses on the person who acquires an interest in subdivided land, not the person who offers or disposes of an interest in subdivided land (MCL 565.804[f]; MSA 26.1286[4][f]).

7. Environment — Natural Resources and Environmental Protection Act — Release of Hazardous Substances — Third-Party Defense.

> A defendant in an action under the Natural Resources and Environmental Protection Act that seeks the benefits of the third-party defense provided in MCL 324.20127(1)(c); MSA 13A.20127(1)(c) must show that the release was caused solely by an act or omission of a third party, other than an employee or agent of the defendant or a person whose act or omission occurred in connection with a contractual relationship with the defendant, and that the defendant exercised due care with respect to the hazardous substance and took reasonable precautions against foreseeable acts or omissions of the third party; circumstantial evidence may be used to meet the defendant's burden of proof under the preponderance of the evidence standard.

*Fink Zausmer, P.C.* (by *Mark J. Zausmer, Alan D. Wasserman,* and *Amy M. Sitner*), for the plaintiffs.

*Sandra V. Jouhet,* for D & T Construction Company and Vincent DiLorenzo.

Before: MURPHY, P.J., and GAGE and ZAHRA, JJ.

ZAHRA, J. This dispute arises out of the sale of two subdivided lots that plaintiffs purchased from defendant D & T Construction Company, a limited partnership, and Vincent DiLorenzo, a partner of D & T (hereafter referred to collectively as defendants and individually as D & T and DiLorenzo). In the course of constructing a home on these lots, plaintiffs' builder unearthed several metal drums containing toxic substances. A lawsuit followed against defendants and others in which plaintiffs asserted, among other claims, a claim under the Land Sales Act, MCL 565.801 *et seq.*; MSA 26.1286(1) *et seq.*, and a claim for declaratory relief under Part 201 of the Natural Resources and Environmental Protection Act (NREPA), MCL 324.20101 *et seq.*; MSA 13A.20101 *et seq.* Defendants appeal as of right and plaintiffs cross appeal from a final judgment resolving the claims of all parties. We affirm the trial court's grant of summary disposition in favor of plaintiffs with regard to their claim under the Land Sales Act, but reverse and remand for further proceedings regarding plaintiffs' request for declaratory relief under Part 201 of the NREPA.

In 1977, defendant Joel Garrett purchased property that he later developed as Spring Lake Subdivision No. 1. Garrett platted the property into 117 lots and provided sewers, water, and roads. Garrett never registered the property under the Land Sales Act, MCL

565.807; MSA 26.1286(7). Garrett mortgaged the property to First Federal of Michigan and, in 1984, First Federal of Michigan took possession of the property after foreclosing on the mortgage. In 1986, defendant D & T purchased eighteen lots of the property, including lots 63 and 64, from First Federal of Michigan. About December 1990, D & T sold lots 63 and 64 to plaintiffs. D & T did not provide any kind of property report to plaintiffs. It was the plaintiffs' and the defendants' intent at the time of this transaction that D & T would construct a residential home for plaintiffs. However, D & T and plaintiffs never reached an agreement to this effect. Eventually, plaintiffs entered into a contract to construct their home with a third party. The contamination was discovered during these construction activities.

### THE LAND SALES ACT

Defendants' sole issue on appeal is whether the trial court erred in granting summary disposition under MCR 2.116(C)(10) in favor of plaintiffs with regard to their claim under the Land Sales Act. A motion brought pursuant to MCR 2.116(C)(10) tests the factual support for the plaintiff's claim. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998). When reviewing a motion brought pursuant to this rule, the court considers affidavits, pleadings, depositions, admissions, and documentary evidence in the light most favorable to the nonmoving party. *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). Summary disposition is properly granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* Appellate review of a motion

for summary disposition is de novo. *Spiek, supra* at 337.

Defendants first argue that a genuine and material issue of fact exists with regard to whether they were required to provide plaintiffs with a property report under the Land Sales Act. Defendants contend that the Legislature intended to place the duty to register property and prepare a property report on the *developer* of subdivided land. Defendants maintain that because they were *purchasers* rather than *developers* of the subdivided land, they were under no obligation to provide plaintiffs with a property report. We disagree.

The pertinent statutory provision states in relevant part:

> Unless the subdivided lands or the transaction is exempt by this act:
>
> \*    \*    \*
>
> (b) A *person* may not *dispose of any interest in subdivided lands* unless a current property report is delivered to the purchaser and the purchaser is afforded a reasonable opportunity to examine the property report prior to the disposition. [MCL 565.806(b);   MSA 26.1286(6)(b) (emphasis added).]

The duty to provide a property report stated in MCL 565.806(b); MSA 26.1286(6)(b) is imposed on a "person" making a disposition of any interest in subdivided land to a purchaser. "Person" is defined in MCL 565.802(l); MSA 26.1286(2)(l), as:

> (l) "Person" means an individual, corporation, . . . *partnership*, unincorporated association, 2 or more of any of the foregoing having a joint or common interest, or any other legal or commercial entity. [Emphasis added.]

We must apply the clear and unambiguous language of a statute as written. *USAA Ins Co v Houston General Ins Co*, 220 Mich App 386, 389; 559 NW2d 98 (1996). We acknowledge that the act also defines the terms "developer" and "purchaser." Nonetheless, we conclude that the issue whether D & T fits within the definition of a "developer" or "purchaser" is not relevant because the duty to provide a property report stated in MCL 565.806(b); MSA 26.1286(6)(b) is imposed on a "person." D & T is a "person" as that term is defined in the act.

We also reject defendants' claim that the there was insufficient proof on which to conclude that the Land Sales Act applied to the Spring Lake Subdivision No. 1. The evidence submitted to the trial court, including the documentation from county records executed in 1980 regarding the 117 platted lots, undisputedly established that Spring Lake Subdivision No. 1 was "subdivided land" within the meaning of MCL 565.802(n); MSA 26.1286(2)(n). There was no genuine issue of material fact regarding that issue.

Also without merit is defendants' claim that the Land Sales Act does not apply because there is no evidence that the alleged developer, Garrett, who originally subdivided and improved the property, provided a property report to anyone when disposing of the property or complied with the registration requirements in MCL 565.807; MSA 26.1286(7). These are not material facts because the Land Sales Act does not condition a person's duty to deliver a current property report on past compliance with the requirements of the Land Sales Act by other persons.

Because D & T was plainly a person who made a disposition of an interest in subdivided lands to pur-

chasers, we hold that D & T had a duty, as a matter of law, to provide the property report unless defendants could show that the disposition was exempt under MCL 565.804; MSA 26.1286(4).

Defendants claim to be relieved of the duty to provide a property report under the Land Sales Act pursuant to four statutory exemptions. We have reviewed each exemption and find them inapplicable to defendants as a matter of law. Defendants first argue that they are exempt under subsection 4(a), MCL 565.804(a); MSA 26.1286(4)(a), because they purchased the eighteen lots, which included lots 63 and 64, from First Federal of Michigan in a single or isolated transaction. Defendants misconstrue subsection 4(a), which exempts "offers or *dispositions of an interest in land . . . [b]y a purchaser* of subdivided land for his or her own account in a single or isolated transaction." (Emphasis added.) This subsection exempts the resale of land subject to the Land Sales Act where the sale is made in a single or isolated transaction. It was not D & T's acquisition, as a purchaser, that was required to be a "single or isolated transaction," but rather D & T's dispositions of its interest in the land. The exemption makes it unnecessary for individual lot purchasers to comply with the Land Sales Act when reselling the lot. Cf. *Wallis v Thomas*, 632 P2d 39, 43 (Utah, 1981). The exemption does not apply to a purchaser acquiring multiple lots for resale. In the case at bar, D & T purchased multiple lots for resale and was selling the lots, with or without a house, to different persons in multiple transactions. Therefore, as a matter of law, subsection 4(a) did not apply.

We also find unpersuasive defendants' argument with regard to subsection 4(b), MCL 565.804(b); MSA 26.1286(4)(b), which provides that the Land Sales Act does not apply "[i]f fewer than 25 separate lots, parcels, units, or interests in subdivided land *are offered or to be offered after September 30, 1973.*" (Emphasis added.) Subsection 4(b) focuses on the date of September 30, 1973. The purpose of this date is not apparent from a plain reading of subsection 4(b). However, rules of statutory construction require that "separate provisions of a statute, where possible, should be read as being a consistent whole, with effect given to each provision." *Gebhardt v O'Rourke*, 444 Mich 535, 542; 510 NW2d 900 (1994). When read in harmony with the effective date of the Land Sales Act, October 1, 1973, subsection 4(b) is properly construed as creating an exemption for certain lands subdivided but not yet sold before the effective date of the Land Sales Act. Subsection 4(b) exempts the previously subdivided lands that would otherwise fall within the definition of "subdivided land" found in MCL 565.802(n); MSA 26.1286(2)(n), where fewer than twenty-five separate lots, parcels, units, or interests in subdivided land were offered or to be offered after September 30, 1973. Because the land in the instant case was not subdivided until after September 30, 1973, subsection 4(b) does not apply.[1]

Defendants' claim of exemption under subsection 4(c), MCL 565.804(c); MSA 26.1286(4)(c), is also without merit. This statutory exemption provides:

---

[1] Further, no genuine issue of fact existed regarding defendants' ownership and offer for sale of more than twenty-five separate lots.

> [T]his act does not apply to . . . dispositions of an interest in land:
>
> *     *     *
>
> (c) On which . . . there is a . . . *legal obligation* on the part of the seller . . . to construct a . . . dwelling unit . . . within 2 years from date of sale . . . . [Emphasis added.]

Defendants claim exemption under this subsection because the parties contemplated that D & T would construct a residential dwelling unit for plaintiffs on lots 63 and 64. Again, defendants have misconstrued the plain meaning of the act. Subsection 4(c) exempts only dispositions of land on which there is a legal obligation to build on the part of the seller. The parties' mere contemplation that defendants would build simply does not bring defendants within this statutory exemption of the Land Sales Act.

Finally, defendants argue they fall within the statutory exemption found at subsection 4(f), MCL 565.804(f); MSA 26.1286(4)(f), which exempts from the requirements of the Land Sales Act, dispositions in land "[t]o any person who acquires the lots for the purpose of engaging in and does engage in, or who is engaged in the business of constructing residential, commercial, or industrial buildings for the purpose of resale . . . ." The focus of this exemption is not the person who offers or disposes of an interest in subdivided land. Rather, the focus of this exemption is on the person who acquires an interest in subdivided land. Defendants do not argue or set forth evidence that plaintiffs' purposes for acquiring lots 63 and 64 came within the scope of subsection 4(f).

In sum, we hold that defendants have shown no basis for disturbing the trial court's grant of summary

disposition in favor of plaintiffs regarding the issue whether D & T had a duty to give plaintiffs a property report. For this reason, we affirm the judgment in favor of plaintiffs with regard to their claim alleging violation of the Land Sales Act.

### THE NATURAL RESOURCES AND ENVIRONMENTAL PROTECTION ACT

Plaintiffs cross appeal the trial court's disposition of their claim under subsection 20126(1) of the NREPA.[2] The NREPA (formerly the Michigan Environmental Response Act, MCL 299.601 et seq.; MSA 13.32(1) et seq. [MERA]), is a complex statutory scheme intended to provide for the identification of environmental contamination and to provide for response activities at such sites. Flanders Industries, Inc v Michigan, 203 Mich App 15, 20-21; 512 NW2d 328 (1993). Under the NREPA, various persons shall be liable for costs related to the removal of the environmental contaminants. MCL 324.20126; MSA 13A.20126. Plaintiffs sought from the trial court a determination that they are not liable for NREPA costs and are entitled to reimbursement for all response activity costs that they have incurred or may incur in the future.

---

[2] MCL 324.20126(1); MSA 13A.20126(1). Plaintiffs' complaint, filed on December 16, 1994, alleged claims pursuant to the Michigan Environmental Response Act (MERA), MCL 299.601 et seq.; MSA 13.32(1) et seq. In 1994, Public Act 451 recodified the MERA as Part 201 of the NREPA, MCL 324.20101 et seq.; MSA 13A.20101 et seq. These recodified provisions took effect March 30, 1995. Farm Bureau Mut Ins Co v Porter & Heckman, Inc, 220 Mich App 627, 629, n 1; 560 NW2d 367 (1996). Part 201 of the NREPA was substantially amended by 1995 PA 71; however, MCL 324.20102a; MSA 13A.20102a specifically provides that any judicial action initiated on or before May 1, 1995, is to be governed by the provisions that were in effect on May 1, 1995. Consequently, the issues presented to the lower court were analyzed pursuant to the recodified provisions of the NREPA in effect on May 1, 1995.

The litigants submitted to the court a stipulated record and trial briefs on which the trial court rendered findings of fact and conclusions of law. This Court reviews the findings of fact by a trial court sitting without a jury under the clearly erroneous standard. *Port Huron v Amoco Oil Co, Inc*, 229 Mich App 616, 636; 583 NW2d 215 (1998). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed. *Id.* By contrast, we review conclusions of law de novo. *Omnicom of Michigan v Giannetti Investment Co*, 221 Mich App 341, 348; 561 NW2d 138 (1997).

The trial court found that the environmental contamination was caused by an act or omission of a third party who was neither an agent nor an employee of defendants and who did not enjoy any contractual relationship with them. It then concluded that, as a matter of law, defendants were relieved of any liability to plaintiffs. Having reviewed the record, we cannot find the trial court's *factual findings* to be clearly erroneous. Nonetheless, we find that the trial court erred in its legal conclusion that the facts were sufficient to bring defendants within the third-party defense found in MCL 324.20127(1)(c); MSA 13A.20127(1)(c), which provides in relevant part:

(1) A person is not liable under section 20126 if that person establishes by a preponderance of the evidence that the release or threat of release was caused solely by:

*    *    *

(c) An act or omission of a third party other than an employee or agent of the person that may be liable under

section 20126, or other than one whose act or omission occurs in connection with a contractual relationship, existing directly or indirectly, with the person that may be liable under section *20126 if the person that may be liable under section 20126 establishes by a preponderance of the evidence both of the following*:

(*i*) That he or she *exercised due care* with respect to the hazardous substance, taking into consideration the characteristics of the hazardous substance, in light of all relevant facts and circumstances.

(*ii*) That he or she *took reasonable precautions* against reasonably foreseeable acts or omissions of a third party and the consequences that foreseeably could result from those acts or omissions. [Emphasis added.]

The trial court construed this statute to require proof of the exercise of "due care" and "reasonable precautions" only when there is evidence of a contractual relationship between a defendant and a third party responsible for the environmental contamination. Because there was no evidence that the responsible third party contracted with defendants, the trial court found the third-party defense applicable to defendants and never considered the "due care" and "reasonable precautions" elements of subsections 20127(1)(c)(*i*) and (*ii*).

Plaintiffs argue that the trial court erred in granting judgment to defendants without finding that defendants met the requirements of subsections 20127(1)(c)(*i*) and (*ii*). Plaintiffs further argue there is no direct and credible evidence in the record to support a finding that defendants exercised due care and took reasonable precautions, and therefore, plaintiffs are entitled to judgment as a matter of law. In response, defendants do not contend that the trial court properly construed the statute, but rather,

defendants argue that they exercised due care and took reasonable precautions as a matter of law because the contamination was not discovered while D & T held title to the property and defendants did not allow anyone to conduct any activity on the property while title was held by D & T.

We hold that the trial court committed an error of law that requires reversal in finding the third-party defense applicable without addressing the "due care" and "reasonable precautions" elements of subsections 20127(1)(c)(*i*) and (*ii*). The primary goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature. *Port Huron, supra* at 624. The first criterion in determining intent is the specific language of the statute. *Id.* If the plain and ordinary meaning of the language is clear, judicial construction is normally neither necessary nor permitted. *Id.* Applying the foregoing principles, we hold that the plain language of MCL 324.20127(1)(c); MSA 13A.20127(1)(c) requires that a defendant seeking the benefit of the third-party defense show that the release was caused solely by an act or omission of a third party (other than an employee or agent of the defendant, or other than a person whose act or omission occurred in connection with a contractual relationship with the defendant), and that the defendant exercised due care with respect to the hazardous substance and that he took reasonable precautions against foreseeable acts or omissions of the third party.

Because a reasonable reading of the plain language of the statute yields this result, additional judicial construction is unnecessary. However, we note that our reading of subsections 20127(1)(c)(*i*) and (*ii*) is

supported by existing legislative analysis[3] and is consistent with federal case law. Because the intent of Michigan's statutory scheme is similar to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended (CERCLA),[4] it is appropriate to examine federal case law interpreting similar issues. *Haworth, Inc v Wickes Mfg Co*, 210 Mich App 222, 228; 532 NW2d 903 (1995). Federal courts interpreting the CERCLA's analogous provision have required the same showing outlined above. *Westfarm Associates Ltd Partnership v Washington Suburban Sanitary Comm*, 66 F3d 669, 682 (CA 4, 1995); *Anspec Co, Inc v Johnson Controls, Inc*, 788 F Supp 951, 958 (ED Mich, 1992); *Kelley v Thomas Solvent Co*, 714 F Supp 1439, 1446 (WD Mich, 1989).

We also reject the litigants' position that this Court should resolve the evidentiary deficiencies of the trial court. Contrary to MCR 2.517, the trial court failed to make findings of fact essential to a proper resolution of the legal question presented in this case. See, e.g., *Sparks v Sparks*, 440 Mich 141, 163; 485 NW2d 893 (1992). We therefore remand to the trial court for further findings under a correct application of the law governing the third-party defense in subsection 20127(1)(c) of the NREPA. Although the burden of establishing the defense rests on defendants, we reject plaintiffs' suggestion that direct evidence is required. Circumstantial evidence is a permissible method for meeting a burden of proof under a preponderance of the evidence standard. *Firemen's Ins*

---

[3] See House Legislative Analysis, HB 5878 and SB 1020, October 17, 1990.

[4] 42 USC 9601 *et seq.*

*Co v Sterling Coal Co*, 348 Mich 564, 569; 83 NW2d 319 (1957).

Finally, plaintiffs argue that the trial court erred in applying equitable principles to dismiss their claim under § 20126. We disagree with plaintiffs' interpretation of the grounds for the lower court's ruling. The trial court dismissed plaintiffs' claims under the NREPA on the basis that defendants were insulated from liability under the third-party defense. In any event, we agree with plaintiffs that only statutory defenses may be asserted to a statutory cause of action. We further agree that equitable considerations are not statutorily defined as a defense to an action under § 20126. However, because we are remanding this case for further proceedings consistent with this opinion, we need not decide whether the trial court's brief reference to equitable principles constituted either error requiring reversal or harmless dicta.

Affirmed in part, reversed in part, and remanded for further proceedings. We do not retain jurisdiction.